STATE of Missouri ex rel. Watson MILLER, Sr., Plaintiff-Relator,

v.

JUDGE OF the ST. LOUIS HOUSING COURT of the State of Missouri, Defendant-Respondent.

No. 34968.

Missouri Court of Appeals, St. Louis District, Division Two.

Aug. 14, 1973.

Rooney, Webbe, Davidson & Schlueter, Daniel H. LeGear, St. Louis, for plaintiff-relator.

Robert C. McNicholas, City Counselor, Eugene P. Freeman, Deputy City Counselor, Raymond J. Issa, Asst. City Counselor, St. Louis, for defendant-respondent.

GUNN, Judge.

Relator, Watson Miller, Sr., seeks to prohibit respondent, the presiding judge of St. Louis City Court No. 1, sitting as a City Housing Court, from executing judgment against relator for a $500.00 fine and court costs on each of 20 consecutive counts for violations of the St. Louis City Building Code.

Relator contends: 1) that penalties were assessed against relator without trial or hearing; 2) that respondent improperly proceeded against him knowing that relator was not the proper party before the court; 3) that relator was denied benefit of counsel at the time of assessment of penalties against him. We believe that relator's first contention has merit, and based on our decision in this case, we need not make a determination of relator's other two points.

Disposition of this case requires us to wade through the murky waters of a muddled factual situation. Relator's simple statement of facts recited in his brief scarcely tells what transpired in this case. But neither does the record before us. The facts, as best we can determine, commence with the filing of informations against Watson Miller by the City of St. Louis for 20 separate violations of the St. Louis Building Code occurring between March 11 and April 7, 1970, for failure to repair or demolish a grain elevator at No. 5 Madison Street, St. Louis, Missouri.

Relator contends that he, Watson Miller, Sr., has no interest in the property in question. He asserts that the property is owned by Clin-Mad, Inc., a Missouri corporation in which his son, Watson Miller, Jr., is an officer. Relator disavows any connection with the corporation.

Summonses were served on relator commanding his appearance in City Court No. 1 on May 25, 1970, at which time relator appeared with his attorney and was granted continuances in all cases to June 8, 1970. On June 8, relator failed to appear in court, and bench warrants for his arrest were issued returnable August 24, 1970.

What transpired on August 24th is critical to this case but is considerably less than clear. Apparently, relator appeared without his attorney before Judge Cady, Judge of City Court No. 1. The court docket entries for that date indicate notations of "N.G." (not guilty) as pleas by relator to each of the 20 charges against Watson Miller. The spaces on the court docket which are designated "G" (guilty) to indicate guilty pleas are left blank. The word "guilty" appears on the docket sheet next to the tenth charge against Watson Miller, but that word is not supplemented by any information or indication that it is a plea or a judgment rendered by the judge on that charge. There is no apparent connection between the word "guilty" and any of the other 19 cases on the docket sheet involving Watson Miller. The date "10–19" is written by each charge, including the tenth charge, as to the new court date for further consideration of the cases. There is absolutely no indication in any record or the court docket of August 24 which would reflect that a fine or penalty was assessed by the court.

Relator did not appear on October 19, and warrants were issued against him returnable for November 16, 1970. On No-

vember 16, 1970, relator and his attorney appeared in court, and the cases were continued to January 4, 1971. Relator did not appear in court on January 4, and Judge Donald H. Whaley, who had replaced Judge Cady as Judge of the St. Louis Housing Court, issued bench warrants for relator's arrest, returnable February 10, 1971. Further action on the cases was postponed from time to time either by relator's failure to appear in court or at his request until May 12, 1971. By letter to relator's attorney dated May 10, 1971, Judge Whaley issued his order finding that on August 24, 1970, relator had been tried and found guilty by Judge Cady and fined $500.00 on each of the 20 charges but that the fines had been stayed. Judge Whaley's order further provided that if relator would appear before his court on May 12, 1971 and pay a fine of $25.00 on each of three charges, relator would be placed on probation and the balance of the fines on all charges would be stayed provided that the structure at No. 5 Madison Street would be brought in compliance with the St. Louis Building Code or demolished within one year from May 12, 1971. On May 12, relator appeared in City Court No. 1 with his attorney and rejected the proffer of probation. Judge Whaley made the following entry on the May 12, 1971 court docket as case disposition: "On a previous finding of guilty on 8/24/70, the court now assesses the terms of fine and probation pursuant to the letter opinion rendered May 10, 1971."

■ Thus we have the new housing court judge issuing his order on May 12, 1971 finding that relator had been tried, found guilty and fined by the previous judge on August 24, 1970, although neither the previous judge's records nor any other evidence support such a finding.

Notices of appeal to the St. Louis Court of Criminal Correction were filed by rela-

tor and placed on that court's docket. On September 23, 1971, after several continuances, the appeals were dismissed by the Court of Criminal Correction as being untimely filed. Motion for rehearing was overruled on October 22, 1971 by the Court of Criminal Correction and notice of appeal was filed with this court. That appeal was dismissed for failure to comply with the rules of the court.

On September 20, 1972, the cases were set on the docket of City Court No. 1 for execution on the August 24, 1970 judgment. A stay of execution was granted to October 4, 1972, at which time relator failed to appear before the City Court and warrants for his arrest issued. On October 6, 1972, relator surrendered and sought a writ of habeas corpus from the St. Louis Circuit Court. Hearing on the habeas corpus proceeding was held on October 11, 1972, at which time Judge Cady testified regarding the original proceedings. Judge Cady testified that the relator had initially pleaded not guilty to the charges on August 24, 1970 but had later changed his plea to guilty; that no trial was held. Relator testified that he at no time changed his plea from not guilty to guilty, and he agreed with Judge Cady that no trial had been held.[1] Relator asserted that he would never have pleaded guilty since he had no interest in the property. The Circuit Court quashed the writ of habeas corpus, and relator filed a petition for writ of prohibition with this court, which was preliminarily granted.

Relator's actions and attitude are not helpful and have contributed to the clouds of confusion surrounding the record in this case. Nor are we convinced that relator has followed proper procedures in seeking a remedy for his problem. However, we cannot find in the record any basis for execution of the penalties against relator purportedly assessed by Judge Whaley's order of May 12, 1971, and by this decision we

---

1. It is noted that Judge Whaley, who assessed the fines against relator, found, contrary to the testimony of Judge Cady and relator, that a trial had been held on August 24, 1970.

make absolute the writ of prohibition against respondent.

■■ It is an aphorism that a court must speak through its records in revealing what has transpired before it. State v. Sykes, 400 S.W.2d 57, 60 (Mo.1966); State v. Hammel, 290 S.W.2d 113, 118 (Mo. 1956); In re Wakefield, 274 S.W.2d 345, 347 (Mo.App.1955). Since these records impart absolute verity, oral evidence may not be considered to supplement them. In re Wakefield, 365 Mo. 415, 422, 283 S.W. 2d 467, 471 (banc 1955); Curtis v. Tozer, 374 S.W.2d 557, 588 (Mo.App.1964). Therefore, we do not take consideration of the testimony at the habeas corpus proceeding.

The record in this case does not establish that Judge Cady did in fact render a judgment against relator. In Taylor v. Taylor, 367 S.W.2d 58, 62 (Mo.App.1963), this court said:

"It is a well established rule of law for which support can be found in the cases and textbooks that a judgment must be sufficiently certain in its terms to be susceptible of enforcement in the manner provided by law. It must be in such form that the clerk is able to issue an execution upon it which an officer will be able to execute."

This principle of law was recently upheld in Gerard v. Kodner, 468 S.W.2d 677, 681 (Mo.App.1971).

Judge Cady's docket, which is the only record relating to any possible judgment which we have before us, shows nothing more than 20 not guilty pleas by relator and a date of 10–19 (possibly a continuance date). The word "guilty" written by only the tenth charge bears no significance in the light of the total docket sheet.

Judge Whaley's docket of May 12, 1971, bases his order to execute against relator on Judge Cady's judgment and penalty assessment, ostensibly found in the docket of August 24, 1970. The docket of August 24 and record offer no foundation for Judge Whaley's order. Where the court record fails to show that the trial court actually rendered any judgment or punishment, an effort to read into the original record or correct it to provide for a judgment or punishment is void and ineffective. City of Ferguson v. Nelson, 438 S.W.2d 249, 255 (Mo.1969).

■■ In determining whether there was a judgment against relator, the record in the case must show that there was in fact a judgment rendered and of what it consisted. Ex parte Perse, 220 Mo.App. 406, 286 S.W. 733 (1926). The judgment must be rendered in a proceeding in a form recognizable as a judgment. Carl v. Carl, 284 S.W.2d 41, 44 (Mo.App.1955).

■ We cannot recognize from respondent's record that a judgment against relator was ever entered. A void judgment has no legal force or effect, may be disregarded entirely and is analogous to no judgment. Hughes v. Neely, 332 S.W.2d 1, 7 (Mo.1960). A fortiori, an absence of judgment and imposition of penalty on the court's records affords absolutely no basis for respondent's proposed execution. There is nothing to execute.

Accordingly, the writ of prohibition heretofore issued is made absolute. Since we have determined that there was no judgment against relator, the doctrine of res adjudicata is not applicable on the charges against him. The City of St. Louis may continue in its diligent pursuit against relator on the charges filed.

SMITH, P. J., and SIMEONE and KELLY, JJ., concur.